IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JAMES EARL SMITH                                                      PLAINTIFF

v.                            Civil No. 1:06-cv-01035

SHERIFF CALVIN KNIGHTON;
CAPTAIN VICTOR REYNOLDS;
LT. DELANEY; and NURSE
PAULA MANESS                                                        DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff, James Earl Smith, (hereinafter "Scott" or "Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.

Smith is currently incarcerated at the Tucker Unit of the Arkansas Department of Correction. Smith contends his constitutional rights were violated while he was incarcerated in the Columbia County Detention Facility.  Specifically, he contends he was:  (1) denied adequate medical care; (2) excessive force was used against him; and (3) he was deprived of his property without the due process of law.

Defendants filed a motion for summary judgment motion (Doc. 17).  The summary judgment motion addresses only Smith's claims that he was denied adequate medical care and his claim that he was deprived of his property without the due process of law.  The motion does not address Smith's claim that excessive force was used against him by Sheriff Knighton and Captain Reynolds.

To assist Smith in responding to the summary judgment motion, a questionnaire was propounded (Doc. 21) by the Court.   Smith filed a timely response to the questionnaire (Doc. 22).

-1-

The summary judgment motion is before the undersigned for issuance of this report and recommendation.

## 1. Background

Smith was booked into the Columbia County Detention Facility (CCDF) on June 21, 2005, on charges of breaking and entering and theft of property.  *Plaintiff's Response* (*hereinafter Resp.*) (Doc. 22) at  ¶ 1.  His bond was set at $5,000.  *Id.* at ¶ 2.

On July 5th, Smith submitted a medical request asking to see a doctor about his wrist and shoulder.  *Resp.* at ¶ 4.  Nurse Paula Maness responded to Smith's request and informed him that an appointment had been scheduled at the Rural Health Clinic for August 3, 2005, at 8:00 a.m., and that he should take Advil for the pain.  *Id.* at ¶ 5.

Smith contends his wrist was injured when Sheriff Knighton, Captain Reynolds, and Lt. Delaney came into pod 4 on July 4th.  *Resp.* at ¶ 6.  According to Smith, Sheriff Knighton came into the pod and asked who was trying to break out of the jail.  *Id.*  Smith maintains Sheriff Knighton and Reynolds then used excessive force against him by pulling him out of his bed and stepping on his wrist.  *Id.*

Defendants submitted as an exhibit a detainee request form purportedly completed by Smith on July 8th stating he needed to use the phone so he could make his bond.  *Defts' Ex.* 3 at page 1. Smith denies he submitted this form.  *Resp.* at ¶ 7.  He states he had no one to make his bond.  *Id.*

On July 12th, Smith submitted a detainee request form stating he needed a job to help pass his time. *Defts' Ex.* 3 at page 2.  He stated he could cook, clean clothes, clean cars, wash cars, be a hall man, or clean the office.  *Id.*  In response, he was told there was nothing available at that time. *Id.*  He did not mention his wrist or shoulder injury in the July 12th request.  *Id.*

Smith contends he was told to submit this request form by Sheriff Knighton and Delaney. *Resp.* at ¶ 9 & ¶ 10.  At the time, Smith also states he had a job. *Id.* at ¶ 10.

According to defendants, on July 13th, Smith submitted a request form stating he needed to call his lawyer and needed a job to pass the time. *Defts' Ex.* 3 at page 3.  Smith asserts he had a job but did need to call his lawyer. *Resp.* at ¶ 12.

According to defendants records, on July 27th Smith submitted a request form stating he needed a job and indicated he could cook, clean clothes, work on a car, clean cars, wash cars, be a hall man, or clean the office. *Defts' Ex.* 3 at page 4.  The request form contains a written response which states Smith would be allowed to call his lawyer that day but there were no jobs available. *Id.*

Smith asserts he did not submit this form. *Resp.* at ¶ 13.  Additionally, he states he had a "job washing car[s]." *Id.*

Smith was seen at the Rural Health Clinic on August 3, 2005, due to his complaints of right wrist pain and swelling. *Resp.* at ¶ 14.  According to the records of the Rural Health Clinic, Smith reported that his wrist had been stepped on six weeks ago. *Defts' Ex.* 4 at page 4.  He also indicated that he had suffered wrist pain prior to this injury due to fact that he had been diagnosed with carpel tunnel syndrome and arthritis in his right wrist by Dr. Roberts. *Id.*

An x-ray of Smith's wrist was taken and he was prescribed an Ultran dose pack. *Resp.* at ¶ 16.  Smith was told to avoid heavy lifting with his right wrist. *Id.*

The x-ray report contained in the records indicates the x-ray was of Smith's left wrist. *Defts' Ex.* 4 at pages and 9.   The x-ray of the left wrist showed some bony fragments that were old and

much of the bone had been reabsorbed. *Defts' Ex.* 4 at pages 3 and 9. There was no evidence of a recent fracture. *Id.* An orthopedic consultation was recommended. *Id.*

However, the doctor's report indicates Smith's right wrist was going to be x-rayed. *Defts' Ex.* 4 at page 3. Smith also maintains it was his right wrist that was hurt and it was his right wrist that was x-rayed. *Resp.* at ¶ 17.

According to defendants' records, Smith bonded out of CCDF later in the day on August 3rd. *Defts' Ex.* 5. Smith, however, contends he did not bond out of the CCDF. *Resp.* at ¶ 19. He maintains no one was going to bond him out of jail. *Id.* Smith sought further medical treatment for his wrist after he was transferred to the Arkansas Department of Correction (ADC). *Id.* at ¶ 20. Although he was asked to describe what treatment he received, Smith did not respond. *Id.*

Defendants indicate Smith was arrested on October 26th and booked back into the CCDF on a charge of theft by receiving. *Defts' Ex.* 6. Smith asserts he was still in jail. *Resp.* at ¶ 21(A).

Smith was booked back into the CCDF on February 7, 2006. *Resp.* at ¶ 21(C). Although he refers to it in his complaint as being booked back in, Smith states he was already in the CCDF.[1] *Id.* When he was booked in on this occasion, Smith contends Sheriff Knighton took a knife from him that was a family heirloom. *Id.* at ¶ 22. Smith indicates the knife was with his personal property. *Id.* The knife was not evidence in a criminal case against him. *Id.*

---

[1]In fact, after he was arrested on October 26, 2005, Smith indicates he remained incarcerated in the CCDF for eighteen months. *Resp.* at ¶ 21(B). This is at odds with information provided by Smith in three consolidated cases he has pending in this court, *Smith v. Knighton*, Civil No. 1:06-cv-01034, 1:-06-cv-01036, 1:06:06-cv-01045. In responding to a summary judgment motion in that case, Smith indicated he was re-arrested on February 7, 2006, because he had been let out of jail erroneously before his time was up. *Resp.* (Doc. 25) at ¶ 10. I note that information available on the public website for the Arkansas Department of Correction, www.arkansas.gov/doc/inmate_info/search.php?dcnum+096264, (information obtained on August 9, 2007), indicates Smith was sentenced in Columbia County on May 18, 2006, and initially received into the ADC on June 6, 2006. Fed. R. Evid. 201.

Smith requested medical treatment because of blood in his stool and were taken to the Rural Health Clinic on March 29, 2006. *Defts' Ex.* 4 at page 2. Smith was asked to provide the date of his request for medical treatment. *Resp.* at ¶ 23(B). He responded that he didn't know the date of the request. *Id.* When he was transferred from the CCDF to the ADC, Smith contends Delaney took all of his paper work. *Id.* However, Smith indicated he believed he submitted the request four to five months before he was taken to the Rural Health Clinic. *Id.* at ¶ 23(A).

When Smith was seen at the Rural Health Clinic, he indicated he had been experiencing dark stools, non-odorous, for about four years. *Defts' Ex.* 4 at page 2. He denied having any trauma in the rectal area and said he had a colonoscopy about one and one-half years ago that had been normal. *Id.* His hemoglobin was checked. *Id.* He was not anemic. *Id.*

The Rural Health Clinic records indicate he was diagnosed with diarrhea. *Defts' Ex.* 4 at page 2. He was prescribed Donnatal and told to return for further evaluation if his condition worsened. *Id.*

## 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## 3. Discussion

As noted above, Smith's complaint asserts three separate claims:  excessive force; denial of medical care; and deprivation of property without due process of law. Defendants' motion for summary judgment addresses only Smith's claims that he was denied adequate medical care and his claim that he was deprived of his property without due process of law.  I will address each of these claims separately.

### *A. Denial of Medial Care*

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  In *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006), the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle  v. Gamble*, 429 U.S.

97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The deliberate indifference standard includes "both

an objective and a subjective component:  'The [plaintiff] must demonstrate (1) that [he] suffered

[from] objectively serious medical needs and (2) that the prison officials actually knew of but

deliberately disregarded those needs.'"  *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir.

2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).  Additionally, "'[t]he

prisoner must show more than negligence, more even than gross negligence, and mere disagreement

with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at

1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).  *See also Gregoire

v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough

that a reasonable official should have known of the risk, a plaintiff must establish that the official

in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care,

deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those

needs are 'serious.'"  *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156

(1992).  "A medical need is serious if it is obvious to the layperson or supported by medical

evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation

and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning

of the Eighth Amendment unless prison officials knew that the condition created an excessive risk

to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th

Cir. 1996).  In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, I believe there are genuine issues of material fact as to whether defendants exhibited deliberate indifference to Smith's serious medical needs. During his incarceration at the CCDF, Smith sought medical care for two separate conditions: the injury to his right wrist; and blood in his stool. Smith requested medical attention for his wrist on July 5th. *Defts' Ex.* 2. While he was taken to the doctor on August 3rd and the an x-ray done, the records before the court appear to indicate the left wrist was x-rayed while it was the right wrist that was injured. *Compare Defts' Ex. Defts' Ex.* 4 at pages 4 and 9. Nothing has been submitted to explain this discrepancy. Moreover, plaintiff denies that he received the prescribed medication or any further treatment and it appears there was a recommendation that Smith be taken for an orthopedic consultation. *Defts' Ex.* 4 at pages 3 and 9. While there may have been valid reasons that Smith was not given any further treatment for his wrist, the court has been given no information suggesting what those reasons are or even who made that decision.

With respect to Smith's request for treatment because of blood in his stool, he contends he requested medical treatment four or five months before he was sent to the doctor on March 29, 2006. *Resp.* at ¶ 23(A). Defendants have submitted no medical request from Smith or other documentation establishing when he first requested medical treatment for this condition, when the appointment was

-8-

scheduled, or by whom.  Smith also contends he did not receive the medication prescribed by the doctor at this March 29th visit.

The court has been provided with no information on how inmate medical requests are processed at the CCDF.  The court has been provided with no medication logs, receipts, or other information establishing that Smith received the prescribed medication.  Clearly, there are genuine issues of fact that preclude summary judgment in defendants' favor on this claim.

### B.  Deprivation of Property

Smith asserts Sheriff Knighton confiscated a knife that was a family heirloom and it has never been returned to him.  *Resp.* at ¶ 22.  This claim does not rise to the level of a constitutional violation.

When an individual is negligently or intentionally deprived of his personal property, the Supreme Court has held that due process is satisfied if the individual has adequate state post-deprivation remedies.  *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)(intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available); *Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994)(negligent or intentional deprivation of prisoner's property fails to state claim under § 1983 if state has adequate post-deprivation remedy).  In this case, a post-deprivation remedy is available because Arkansas recognizes a cause of action for conversion, *Elliot v. Hurst*, 307 Ark. 134, 817 S.W.2d 877, 880 (1991)(cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right).  Smith therefore has an adequate post-deprivation remedy that satisfies due process.  Defendants are entitled to summary judgment on this claim.

## **4. Conclusion**

For the reasons stated, I  recommend that the defendants' motion for summary judgment (Doc. 17) be granted in part and denied in part.  Specifically, I recommend the motion be granted with respect to Smith's claim that he was deprived of his property without due process of law.  I further recommend that the motion be denied with respect to Smith's claim that he was denied adequate medical care.   As noted above, the defendants' motion did not address Smith's excessive force claim.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **10th day of August 2007.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE